[Crim. No. 5779.   In Bank.   Feb. 24, 1956.]

THE PEOPLE, Respondent, v. ANTHONY CITRINO, Appellant.

Anthony Citrino, in pro. per., and Robert E. Tarbox, under appointment by the District Court of Appeal prior to transfer of the appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

TRAYNOR, J.—Defendant appeals from a judgment of conviction entered on a jury verdict finding him guilty of two counts of second degree burglary.

During the evening of June 3, 1954, or the early morning of June 4th, the premises of William and Frederick Motors in San Francisco were burglarized. An automobile, various items of garage equipment, a battery, and tools were taken. During the evening of June 5, 1954, or the early morning of June 6th, the premises of Pacific Nash Motor Sales were burglarized. An automobile and a safe containing the company's records and automobile ownership certificates were taken. A few days later defendant sold to Ralph Astengo, a service station operator, some of the tools and equipment belonging to William and Frederick Motors and their employees. The sale price of $25 was much below the market value of the items sold. Defendant told Astengo that the

tools and equipment were his and that "[he] got them from his father. . . ." Astengo requested and received a bill of sale from defendant, who signed it with the name "Anthony Colla." He returned in about five minutes and changed the signature to "Anthony Cotelli." At the trial, however, defendant testified that an acquaintance named Gino Cotelli gave him the tools and equipment and that he did not know where Cotelli was. When arrested he was asked if he had sold property under the alias of Cotelli and he refused to answer. He admitted that he had lived at 345 Second Avenue in San Francisco under the name of Anthony Colla. He testified that he shared this house with Bill Bragg and Gino Cotelli, and that the three of them moved out of the house on June 17th because an informant told him that Inspector Keating of the San Francisco Police Department was looking for him and Bragg. Before defendant's arrest, Inspector Keating and other officers searched the premises and defendant's automobile, which was parked nearby. They found property taken in both burglaries in the garage and on the back porch and in the basement of the house. On a mantelpiece, together with some of defendant's personal papers, they found a number of the stolen ownership certificates. On July 9th, tools stolen from William and Frederick Motors were found in a liquor store in Oakland, following a burglary thereof. An automobile purchased by defendant under the name of Robert Jennings was parked in a service station adjacent to the liquor store. The motor and hood were warm. Defendant testified that he gave the car to Bragg on about July 6th, that he did not commit the burglaries, that the property found by the officers at 345 Second Avenue was put there by Cotelli, and that he did not know how the ownership certificates got onto the mantelpiece.

He contends that illegally obtained evidence was admitted against him. Since this case was tried before our decision in *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905], he is not precluded from raising this question now although he did not object to the admissibility of the evidence at the trial. (*People* v. *Kitchens, ante,* p. 260 [294 P.2d 17].)

The record, however, is silent as to whether the officers had a search warrant, and in the absence of any evidence showing the illegality of the search, we must presume that the officers regularly and lawfully performed their duties. (*People* v. *Farrara, ante,* p. 265 [294 P.2d 21]; Code Civ. Proc., § 1963(1), (15), (33); *People* v. *Serrano,* 123 Cal.App.

339, 341 [11 P.2d 81]; see also *Vaughn* v. *Jonas,* 31 Cal.2d 586, 601 [191 P.2d 432].) Defendant argues that even if the officers had a search warrant they exceeded any authority it might give them (see Pen. Code, § 1524) when they took a conditional sales contract showing his purchase of the automobile found near the liquor store in Oakland. ■ Since the officers could have testified to the presence of the contract without removing it from the house and thus have shown his ownership of the automobile, he was not prejudiced by the admission into evidence of the contract itself. (*Cf. People* v. *Boyles,* 45 Cal.2d 652, 654 [290 P.2d 535].)

Defendant contends that the evidence of the commission of another crime, the burglary of the Oakland liquor store, was erroneously admitted. ■ It is now "settled in this state that except when it shows merely criminal disposition, evidence which tends logically and by reasonable inference to establish any fact material for the prosecution, or to overcome any material fact sought to be proved by the defense, is admissible although it may connect the accused with an offense not included in the charge." (*People* v. *Woods,* 35 Cal.2d 504, 509 [218 P.2d 981].) ■ Defendant's possession of the stolen tools was a material fact, and the evidence that some of the tools were found early in the morning in a store under circumstances indicating that they had been recently abandoned coupled with the fact that defendant's recently driven automobile was parked nearby was circumstantial evidence that defendant had been in possession of the tools.

Defendant's main contention is that the evidence is insufficient to support the verdict. He argues that there is nothing in the record to connect him with the burglaries other than the evidence of his sale of some of the stolen property to Astengo. ■ Possession alone of property stolen in a burglary is not of itself sufficient to sustain the possessor's conviction of that burglary. There must be corroborating evidence of acts, conduct, or declarations of the accused tending to show his guilt. (*People* v. *Boxer,* 137 Cal. 562, 563-564 [70 P. 671]; *People* v. *Carroll,* 79 Cal.App.2d 146, 148 [179 P.2d 75].) ■ When possession is shown, however, the corroborating evidence may be slight (*People* v. *Morris,* 124 Cal.App. 402, 404 [12 P.2d 679]; *People* v. *Taylor,* 4 Cal.App.2d 214, 217 [40 P.2d 870]; *People* v. *Russell,* 34 Cal.App.2d 665, 669 [94 P.2d 400]; *People* v. *Thompson,* 120 Cal.App.2d 359, 363 [260 P.2d 1019]), and the failure to show that possession was honestly obtained is itself a

strong circumstance tending to show the possessor's guilt of the burglary. (*People* v. *Lang,* 142 Cal. 482, 484-485 [76 P. 232]; *People* v. *Taylor, supra,* 4 Cal.App.2d 214, 217.)

Defendant's explanation that Cotelli gave him the property was not contradicted by any witness, but in view of defendant's own use of that name and the fact that he did not know where Cotelli was at the time of the trial, the jury could reasonably conclude that Cotelli and his gift were both fictitious. (*People* v. *Buratti,* 96 Cal.App.2d 417, 418-419 [215 P.2d 500].) Other corroborative evidence was his false statement to Astengo that he received the property from his father (see *People* v. *Conrad,* 125 Cal.App.2d 184, 185 [270 P.2d 31]; *People* v. *Goodall,* 104 Cal.App.2d 242, 247 [231 P.2d 119]; *People* v. *Mercer,* 103 Cal.App.2d 782, 789 [230 P.2d 4]; *People* v. *Buratti, supra,* 96 Cal.App.2d 417, 419; *People* v. *Russell, supra,* 34 Cal.App.2d 665, 669), his selling tools and equipment worth more than $150 for $25 (see *People* v. *Buratti, supra,* at 419), his using the aliases "Anthony Colla" and "Anthony Cotelli" in making the sale (see *People* v. *Buratti, supra,* at 419; *People* v. *Morris, supra,* 124 Cal.App. 402, 404), and his testimony that he and the others moved out of the house on Second Avenue because an informant told him that Inspector Keating was looking for him and that he bought the automobile found in Oakland under the name of Robert Jennings because the inspector was looking for him under the name of Anthony Colla.

Defendant also contends that the trial court erroneously permitted the district attorney to question him beyond the proper limits of cross-examination. (Pen. Code, § 1323.) On direct examination defendant denied any participation in the two burglaries charged. On cross-examination he was asked how his automobile got to Oakland and whether he had been in the vicinity at the time it was found. The questions were proper, for when a defendant takes the stand and makes a general denial of the crime with which he is charged, the prosecution can show circumstances that tend to connect him with it. (*People* v. *Zerillo,* 36 Cal.2d 222, 227-229 [223 P.2d 223].) Questions relating to defendant's use of false addresses in purchasing the automobile were improper, but he could not have been prejudiced by them, since his use of a false name at the same time had already properly been shown.

Defendant contends that the district attorney was guilty of prejudicial misconduct in making an offer of proof

and in his argument to the jury. In attempting to determine defendant's reason for flight when he heard that Inspector Keating was looking for him, the district attorney asked defendant why he abandoned an automobile at the Second Avenue residence. Upon defendant's objection and the court's observation that the examination was somewhat afield, the district attorney stated, "Well, your Honor, the car was seen at Second Avenue. The man was carefully avoiding that address after the burglary." The observation that defendant was "carefully avoiding that address" was a reasonable inference from defendant's own testimony that he left because the police were looking for him, and even if the statement that "the car was seen at Second Avenue" was "somewhat afield," it would not justify a reversal. ■■■ The district attorney's statement in his argument to the jury, "Here you have a man at the age of 22 who has devoted the latter part of his years to a life of crime" was not supported by the evidence and was therefore improper. The jury, however, was immediately instructed to disregard it, and in the light of the whole record we do not believe that it affected their verdict.

The judgment is affirmed.

Gibson, C. J., Schauer, J., Spence, J., and McComb, J., concurred. Shenk, J., concurred in the judgment.

CARTER, J.—I concur in the judgment of affirmance but I do not agree with what is said in the majority opinion with respect to the rule announced in *People* v. *Woods*, 35 Cal.2d 504 [218 P.2d 981], in which case I dissented. I do not believe that the facts in the Woods case are analogous to the facts in the case at bar or that it is necessary to rely on the Woods case as authority for the conclusion reached in the case at bar.